* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction over the parties and the subject matter. The parties to this action are subject to the Workers' Compensation Act and plaintiff was an employee of Continental Tire on May 19, 2005. *Page 2 
2. On May 19, 2005, defendant-employer was a duly qualified self-insured employer, with Gallagher Bassett serving as defendant's servicing agent. Gates McDonald replaced Gallagher Bassett as defendant's servicing agent in December 2005.
3. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of the parties.
4. Plaintiff's average weekly wage was $1,023.03, yielding a compensation rate of $682.02.
5. The following were entered into evidence by stipulation:
 a. The Pre-Trial Agreement, marked as Stipulated Exhibit 1;
 b. Various medical records and Industrial Commission forms, marked as Stipulated Exhibit 2;
 c. Additional medical records marked as Stipulated Exhibit 3;
 d. Plaintiff's answers to interrogatories marked as Stipulated Exhibit 4; and
 e. Plaintiff's Employment Security Commission work search records marked as Stipulated Exhibit 5.
 * * * * * * * * * * *
The following were entered into evidence during the hearing before the Deputy Commissioner:
 a. Plaintiff's Exhibit 1, Employees' Statement of Work Related Injury, dated May 19, 2005;
 b. Defendant's Exhibit 1, the transcript of plaintiff's recorded statement taken May 25, 2005; and *Page 3 
 c. Defendant's Exhibit 2, surveillance video depicting plaintiff's workstation on May 19, 2005.
 * * * * * * * * * * *
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDING OF FACTS
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 39 years old. Plaintiff has a twelfth grade education and was hired by defendant in June 2004 as a tire repairer.
2. As a tire repairer, plaintiff's job duties consisted of labeling, painting, trimming and fixing tires as well as operating a forklift. As part of these duties, plaintiff was required to lift tires, unassisted, from a floor-level conveyor belt to the repair table and then "throw" them to a higher conveyor belt when the repair was complete.
3. On May 19, 2005, plaintiff's shift began at 7:00 p.m. At the hearing before the Deputy Commissioner, plaintiff testified that during the first hour of her shift, she felt a sharp pain in her back as she lifted a tire from the ground-level conveyer belt. Plaintiff continued to lift tires as she worked, but the pain continued to worsen and spread across her entire back.
4. That same day, plaintiff reported the incident to Mike Peeler, who was her supervisor, as well as to Christy Cole, the company's onsite nurse. The Form 19 Employer's Report of Employee's Injury or Occupational Disease to the Industrial Commission completed on May 19, 2005 indicates that plaintiff's injury occurred at 7:20 p.m. and that plaintiff reported hurting her back picking up a tire. *Page 4 
5. Plaintiff's written statement on defendant's injury form indicates that she was injured "picking up tires off the bottom line, repairing them, and throwing them on the top line." The form also describes her back pain. Furthermore, Nurse Cole's written patient notes for plaintiff from May 19, 2005 confirm plaintiff's description of events and pain.
6. After time in the nurse's office, plaintiff was driven in the company van to Presbyterian Hospital's emergency room. Plaintiff arrived in the emergency room just before midnight. There, as documented by the medical records of that night, she was diagnosed with a lumbar strain, assigned resultant work restrictions, and given a shot for pain. These records reflect that plaintiff hurt her back "pulling tires." Under the restrictions given plaintiff at that time, she was not to lift greater than five pounds, bend, or stoop for four days.
7. On May 20, 2005, plaintiff presented to OccMed, an affiliate of Charlotte Orthopaedic Specialists, at the request of defendant. Plaintiff was again diagnosed with a lumbar strain, was prescribed six weeks of physical therapy, and due to her back condition was restricted from production-paced work and lifting more than five to ten pounds. Plaintiff was also directed to alternate standing, sitting, and walking as needed.
8. On May 23, 2005, plaintiff contacted the defendant regarding light-duty work. She was told not to return to work at that time, and to follow up with her family doctor. At this time plaintiff began receiving short-term disability benefits from defendant in the amount of $385.00 per week. Mr. Tracy Beaudry, defendant-employer's safety manager, testified at the hearing before the Deputy Commissioner regarding these benefits. Plaintiff received the benefits until July 8, 2005. These short-term benefits were funded solely by defendant-employer, without any contribution from plaintiff. *Page 5 
9. On May 23, 2005, plaintiff was treated at Barnett Family Practice. The medical records from this visit repeat the circumstances of plaintiff's May 19, 2005 injury. Plaintiff was told to continue with her pain medications, to avoid activities that would exacerbate her pain and to continue heat and massage. The medical records from the visit document that plaintiff's physician telephoned defendant-employer and was informed that plaintiff was not permitted to perform light-duty work and must either be released to full-duty status or be written out of work for a specified length of time. Due to her back condition, plaintiff was written out of work until May 31, 2005.
10. Upon her return to Barnett Family Practice on May 31, 2005, plaintiff was suffering from diffuse back pain, stiffness and pain with movement. Plaintiff was released from work until Dr. Seth Jaffe, an orthopedic surgeon could evaluate her.
11. On June 3, 2005, plaintiff presented to Dr. Jaffe at Carolina Bone Joint. Plaintiff was found to have 75% of normal back movement. Dr. Jaffe also detected trapezial and long thoracic muscle spasms. Dr. Jaffe diagnosed plaintiff with a low back sprain and recommended physical therapy and rehabilitation. On June 17, 2005, plaintiff again presented to Dr. Jaffe who found 80% back movement and some muscle spasms. Dr. Jaffe instructed plaintiff to continue therapy and work restrictions.
12. On July 3, 2005, plaintiff received a letter from defendant indicating that her employment had been terminated due to a reduction in the work force.
13. On July 5, 2005, plaintiff again presented to Dr. Jaffe, who opined that plaintiff's back condition was resolved. At this visit, he released plaintiff to work without restrictions. In his deposition testimony, however, Dr. Jaffe opined that the condition for which he treated plaintiff, a musculotendonous problem can recur. *Page 6 
14. As plaintiff testified at the hearing before the Deputy Commissioner, she has had recurring back pain once or twice every two weeks. Plaintiff described the pain as being so sharp that she has to rest in bed for at least an hour. Plaintiff testified that any type of movement aggravates the pain. The Full Commission accepts plaintiff's testimony regarding her ongoing back pain as credible.
15. The video surveillance DVD entered into evidence at the hearing before the Deputy Commissioner depicts plaintiff's workstation from 7:00 p.m. until 8:00 p.m. on May 19, 2005. The video shows plaintiff at her work station for most of the hour, repetitively lifting tires from floor-level to a table slightly below her waist, working on the tire, and then forcefully lifting/throwing the tire onto a conveyer belt at or above her shoulder height. There are several segments of time in which plaintiff is unobserved as she has left the camera viewing area. In that plaintiff testified that she continued working after she felt pain, her testimony is uncontradicted.
16. Defendant-employer paid plaintiff sickness and accident benefits from May 19, 2005 through July 8, 2005 when they were ceased due to plaintiff's release to return to work without restrictions. As defendant-employer's safety manager, Tracey Beaudry testified at the hearing before the Deputy Commissioner, the sickness and accident plan was completely funded by defendant-employer.
17. Thereafter, plaintiff began receiving weekly unemployment benefits through the South Carolina Employment Security Commission in the amount of $426.00. Plaintiff testified that the Employment Security Commission required her to look for work regularly and make at least two job contacts per week. The evidence reveals and the Full Commission so finds that plaintiff has been reasonably seeking, making four, five and even six job contacts per week, but has been unable to find suitable employment. *Page 7 
18. The competent evidence of record fails to establish that defendant had suitable employment for plaintiff.
19. In December 2005, plaintiff presented to Dr. Carol Kooistra, a neurologist, for an independent medical evaluation. Dr. Kooistra opined that plaintiff was still suffering from persistent back pain. Dr. Kooistra testified within a reasonable degree of medical certainty that plaintiff's back injury was caused by the work-related incident on May 19, 2005. Dr. Kooistra assigned a permanent partial disability rating of 5% to plaintiff's spine using the AMA guidelines.
20. Dr. Jaffe testified that he made an objective finding regarding plaintiff's condition when he "physically felt" a palpable spasm in plaintiff's back during the June 3, 2005 examination. Dr. Jaffe testified within a reasonable degree of medical certainty, and the Full Commission so finds, that plaintiff's back injury was caused by her work, which involved lifting and throwing tires on May 19, 2005. The Full Commission gives greater weight to Dr. Jaffe's opinion regarding plaintiff's ongoing disability as opposed to Dr. Kooistra's assessment and assignment of a permanent partial disability rating to plaintiff as Dr. Jaffe regularly examined plaintiff while Dr. Kooistra only examined plaintiff one time on December 6, 2005 for an independent medical examination.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following: *Page 8 
 CONCLUSIONS OF LAW
1. On May, 19, 2005, as plaintiff lifted a tire, she sustained a compensable injury by accident to her back as a result of a specific traumatic incident of the work assigned, arising out of and in the course of her employment with defendant. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has the burden of proving disability, defined as a loss of wage earning capacity. Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993). In order to meet the burden of proving disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co., 305 N.C. 593,290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that she has, after a reasonable effort, been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages. Demery v. PerdueFarms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. LowesProduct Distribution, supra. In this case, although Dr. Jaffe released plaintiff to return to work on July 5, 2005 without restrictions, plaintiff was unable to return to her job due to a reduction in the work force on July 3, 2005. Moreover, plaintiff has continued to experience sharp back pain one to two times every one to two weeks for which she must rest in bed for at least one hour at a time to recuperate. Nonetheless, plaintiff has reasonably continued to look for employment but has been unable to find suitable work. *Page 9 
3. When a plaintiff meets her burden of showing disability, the burden then shifts to defendant to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Defendant has failed to carry this burden. Demery v. PerdueFarms, Inc., supra.
4. As a result of the May 19, 2005 compensable injury, plaintiff has been temporarily totally disabled from work and is entitled to receive compensation for temporary total disability at the rate of $682.02 per week from May 20, 2005 and continuing until further Order of the Commission. N.C. Gen. Stat. §§ 97-2(6); 97-29.
5. Plaintiff is entitled to have defendants pay all medical expenses incurred or to be incurred as a result of her compensable injury for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-19; 97-25.
6. Defendant is entitled to a credit for the benefits paid plaintiff through its fully funded short-term disability plan. N.C. Gen. Stat. § 97-42.
7. Defendant is entitled to a credit for any unemployment compensation paid plaintiff. N.C. Gen. Stat. § 97-42.1.
 * * * * * * * * * * *
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. For her compensable back injury, defendant shall pay plaintiff temporary total disability compensation at the rate of $682.02 per week for the time period beginning May 20, *Page 10 
2005 and continuing until further Order of the Commission. Amounts that have accrued shall be paid to plaintiff in a lump sum subject to the attorney's fee approved below.
2. Defendant shall pay all medical expenses incurred or to be incurred as a result of her compensable back injury for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability.
3. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: Twenty-five percent of any lump sum due plaintiff shall be deducted and paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be paid directly to plaintiff's counsel.
4. Defendant is entitled to a credit for the benefits paid plaintiff through its fully funded short-term disability plan.
5. Defendant is entitled to a credit for any unemployment compensation paid plaintiff under South Carolina Employment Security Law.
5. Defendant shall pay the costs.
This the 20th day of February 2007.
 S/___________________ PAMELA T. YOUNG COMMISSIONER
CONCURRING: S/___________________ LAURA KRANIFELD MAVRETIC *Page 11 
COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1